# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1906 | **DATE** | 10/12/2004 |
| **CASE TITLE** | Kim vs. Dawn Food Products, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)　☐ Local Rule 41.1　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment of non-infringement (Count IV) is granted. Defendant's motion for declaratory judgment of non-infringement (Counterclaim I) is granted. In light of the Court's ruling that Defendant does not infringe the claims of the '355 patent either literally or under the doctrine of equivalents as a matter of law, Defendant's Counterclaim II and affirmative defenses as to invalidity are moot and Defendant's summary judgment motion as to invalidity is denied as moot. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of breach of contract (Count I) and trade secret misappropriation (Count III). Status hearing set for 10/28/04 is stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

YOON JA KIM, )
)
        Plaintiff, )
) No. 01 C 1906
   v. )
) **DOCKETED**
DAWN FOOD PRODUCTS, INC., )
OCT 1 3 2004)
        Defendant. )
)

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

*Pro se*[1] Plaintiff Yoon Ja Kim ("Kim") filed a four count complaint against Defendant

Dawn Food Products, Inc. ("Dawn"), alleging breach of contract (Count I), fraud[2] (Count II),

trade secret misappropriation (Count III), and infringement of United States Patent No. Re.

---

[1] Although two different law firms have represented Kim at various stages of the litigation, Kim proceeds on summary judgment *pro se*. Kim filed her Complaint and Amended Complaint *pro se*. (R. 1-1, Compl.; R. 23-1, Am. Compl.) Attorneys for Lord, Bissell & Brook, LLP filed a notice of appearance in this Court to represent Kim on April 30, 2003. (R. 41-1, Attorney Appearances for Pl. at 1.) On February 12, 2004, Kim requested that the Court grant the Lord, Bissell & Brook, LLP attorneys' motion to withdraw in light of "irreconcilable differences concerning the future handling of the above-captioned case." (R. 66-1, Pl.'s Mot. to Withdraw at 1.) Two months later, attorneys for Ryndak & Suri filed a notice of appearance in this Court to represent Kim. (R. 75-1, Attorney Appearances for Pl. at 1.) On July 23, 2004, Kim requested that the Court grant the Ryndak & Suri attorneys' motion to withdraw, citing "conflicts between attorneys and the plaintiff." (R. 96-1, Pl.'s Mot. to Withdraw at 1.) The Court granted Kim's requests, and Kim has since proceeded *pro se*. (R. 67-1, Minute Order; R. 98-1, Minute Order.) Local Rule 56.2 requires a defendant who files a motion for summary judgment against a *pro se* plaintiff to provide the *pro se* plaintiff with a plainly worded notice explaining a summary judgment motion, local rules governing such motions, and the consequences if the plaintiff fails to respond to the motion. L.R. 56.2. Dawn served and filed the required notice. (R. 101-1, Notice to *Pro Se* Pl.)

[2] The Court dismissed Count II with prejudice on August 27, 2002. (R. 28-1, Minute Order) (Lefkow, J.)

36,355 ("the '355 patent") (Count IV).

In response, Dawn asserts the following affirmative defenses[3]: Count III is barred by the statute of limitations; the '355 patent is invalid under 35 U.S.C. §§ 102, 103; and the '355 patent is invalid for indefiniteness under 35 U.S.C.§ 112. Dawn further seeks a declaratory judgment that Dawn does not infringe the '355 patent (Counterclaim I), and a declaratory judgment that the '355 patent is invalid under 35 U.S.C. §§ 102 and 103 (Counterclaim II).[4]

For the reasons stated herein, the Court grants summary judgment of noninfringement (Count IV), and grants Dawn's motion for declaratory judgment of noninfringment (Counterclaim I). Counterclaim II, Dawn's summary judgment motion as to invalidity, and the affirmative defenses as to invalidity are denied as moot. The Court declines to exercise supplemental jurisdiction over Kim's state law claims of breach of contract (Count I) and trade secret misappropriation (Count III).

---

[3] Dawn asserts two additional affirmative defenses that have no merit. First, Dawn asserts that "Count I fails to state a claim upon which relief may be granted." This is the basis for a Rule 12(b)(6) motion, not an affirmative defense. Because Dawn already has answered the complaint, Dawn's Rule 12(b)(6) defense is improper and the Court strikes it. *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986). Second, Dawn argues that the '355 patent is invalid under the doctrine of *res judicata* in light of another district court's ruling that the '355 patent is invalid under the Section 102(b) on-sale bar. *Kim v. Earthgrains Co.*, No. 01 C 3895, 2002 WL 1949235 (N.D. Ill. Aug. 22, 2002) (Zagel, J.). The Federal Circuit, however, reversed that ruling. *Kim v. Earthgrains Co.*, No. 03-1047, 2003 WL 731737 (Fed. Cir. Mar. 4, 2003). Accordingly, Dawn's *res judicata* defense fails as a matter of law.

[4] Dawn seeks a declaratory judgment (Counterclaim III) based upon the doctrine of *res judicata* in light of the district court's ruling in *Kim v. Earthgrains Co.*, No. 01 C 3895, 2002 WL 1949235 (N.D. Ill. Aug. 22, 2002) (Zagel, J). As stated, however, *res judicata* does not apply. Accordingly, Counterclaim III has no merit.

# LEGAL STANDARD

## I. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).

## II. Claim Construction

A determination of patent infringement is a two-step process in which the Court first construes the claims. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). The factfinder then compares the properly construed claims to the accused device to determine, as a question of fact, whether all of the claim limitations are present in the accused device. *Id.* at 1454; *Int'l Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363, 1369 (Fed. Cir. 2004).

3

The language of the claims is the starting point for all claim construction analysis, because it frames and ultimately resolves all issues of claim interpretation. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1999); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). In construing an asserted claim, the analytical focus of the construction must begin, and remain centered, on the language of the claims themselves. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201-02 (Fed. Cir. 2002).

In the absence of an express intent by the patentee to impart a novel meaning to a claim term, the words are presumed to take on the ordinary and customary meaning attributed to them by those of ordinary skill in the art. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The Court may determine the ordinary and customary meaning of a claim term by reviewing a variety of sources, beginning with the intrinsic evidence consisting of the claim terms themselves, the written specification, drawings, and prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Court may consult dictionaries, encyclopedias and treatises to determine the ordinary meaning of a word. *Texas Digital*, 308 F.3d at 1202-03.

### III. Patent Infringement

Because the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial burden either by providing evidence that would preclude a finding of infringement, or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case. *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). A court may grant

4

summary judgment of noninfringement if, after viewing the alleged facts in the light most favorable to the patentee and drawing all justifiable inferences in the patentee's favor, there is no genuine issue as to whether the patent claims encompass the accused device. *Novartis Corp. v. Ben Venue Labs. Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

"To prove infringement, the patentee must show that the accused device meets each claim limitation." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). This is known as the "All Elements Rule." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S. Ct. 1040 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935-36 (Fed. Cir. 1987) (*en banc*). Summary judgment of noninfringement is proper where there is no genuine issue as to whether the accused device lacks a single claim element or its equivalent. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

"An accused device literally infringes a claim if every limitation recited in the claim appears in the accused device, *i.e.*, the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000) (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). An accused device infringes a claim under the doctrine of equivalents if it performs substantially the same overall function, in substantially the same way, to produce substantially the same overall result as the claimed invention. *Warner-Jenkinson*, 520 U.S. at 40; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S. Ct. 854, 856 (1950).

# BACKGROUND

## I.     The '355 Patent

Kim is the named inventor and holder of the '355 patent, which issued on October 26,

1999 as a reissue of United States Patent No. 5,510,129 ("the '129 patent"). Kim filed the

application that ultimately issued as the '129 patent on September 19, 1994. The '129 patent

issued on April 23, 1996. The '129 patent was a continuation-in-part of Patent Application

Serial No. 147,995, which Kim filed on November 5, 1993 and has since abandoned.

The '355 patent discloses a potassium bromate replacer comprising an ascorbic acid

composition that acts as a slow acting oxidant in the breadmaking process. '355 patent, col. 3,

lns. 8-10. Potassium bromate, an oxidizing agent for bread dough, was once widely used in the

breadmaking industry. Its use became less common, however, after the FDA discovered that it

causes cancer in laboratory animals. The invention of the '355 patent serves as a substitute for

potassium bromate.

## II.     The Disputed Claims

Kim alleges that Dawn manufactures various bread mixes that infringe Claims 5, 6, 7, 8,

and 10 of the '355 patent. Dependent Claims 6, 7, and 8 depend from Claim 5. Accordingly,

Claims 6, 7, and 8 contain all of the limitations of Claim 5. 35 U.S.C. § 112, ¶ 4.

Claim 5 recites:

> A potassium bromate replacer composition consisting essentially of, by
> weight:
>
>      (a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts
> flour;
>
>      (b) about 0.015 to 0.2 parts food acid per 100 parts flour, said food acid
> selected from the group consisting of acetic acid, citric acid, fumaric acid,

> lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric
> acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof;
> and
>
>> (c) flour.

'355 patent, col. 8, lns. 47-57.

Dependent Claim 6 recites: "The composition of Claim 5, wherein said food acid slows down oxidation of ascorbic acid to dehydroascorbic acid during a manufacturing process of yeast-leavened products." '355 patent, col. 8, lns. 58-61.

Dependent Claim 7 recites: "The composition of Claim 5, wherein said ascorbic acid acts as a slow acting oxidant that is functional throughout the entire manufacturing process of yeast-leavened products." '355 patent, col. 8, lns. 62-65.

Dependent Claim 8 recites: "The composition of Claim 5, wherein said ascorbic acid is a more effective oxidant than ascorbic acid when used alone during a manufacturing process for making yeast-leavened products." '355 patent, col. 8, ln. 66 - col. 9, ln.2.

Claim 10 recites:

> A potassium bromate replacer composition consisting essentially of, by
> weight:
>
>> (a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts
>> flour;
>> (b) about 0.015 to 0.2 parts food acid per 100 parts flour, said food acid
>> selected from the group consisting of acetic acid, citric acid, fumaric acid,
>> lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric
>> acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures
>> thereof;
>> (c) about 0.5 parts yeast food per 100 parts flour; and
>> (d) flour.

'355 patent, col. 10, lns.1-12.

## II.     The Accused Products

Kim accuses two Dawn products—the Yeast Raised Donut Mix and the Danish Mix—of incorporating the formulas of the '355 patent (collectively, the "Accused Products"). Dawn currently makes its Yeast Raised Donut products according to Dawn's Formula No. 32987 and its Danish products according to Dawn's Formula No. 34884.

## ANALYSIS

## I.     The Accused Products Do Not Infringe The '355 Patent As A Matter Of Law (Count IV)

### A.     Claim Construction

The first step in a patent infringement analysis is claim construction. *Vitronics,* 90 F.3d at 1581-82 (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)). Claim construction presents a question of law to be resolved by the Court. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304 (Fed. Cir. 1999).

The parties dispute the meaning of the following terms: (1) "a potassium bromate replacer composition consisting essentially of . . ." (the preamble); (2) "about 0.001 to 0.03 parts ascorbic acid;" (3) "about 0.015 to 0.2 parts food acid per 100 parts flour, said food acid selected from the group consisting of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof;" (4) "flour;" (5) "wherein said food acid slows down oxidation of ascorbic acid;" and (6) "yeast food."

The asserted claims are not complex—independent Claims 5 and 10 are essentially a list

of ingredients—and the parties devote scant argument to claim construction.[5] The parties

submitted a Joint Claim Construction brief on May 21, 2004.[6] (R. 78-1, Joint Claim Constr.)

The parties did not file *Markman* briefs and the parties did not request a *Markman* hearing.

### 1. "Potassium Bromate Replacer Composition Consisting Essentially Of . . ." (Claims 5, 6-8, 10)

Dawn argues that a "potassium bromate replacer composition" means that the claimed

combination of ascorbic acid and food acid performs the function of potassium bromate in a

yeast-leavened product. Kim contends that the term means "a composition of slow acting

ascorbic acid oxident as potassium bromate replacer I (one) for use in the manufacture of yeast-

leavened products."

Dawn's proposed construction tracks the plain claim language of the preamble. The

Court adopts Dawn's construction.

### 2. "About 0.001 To 0.03 Parts Ascorbic Acid" (Claims 5, 6-8, 10)

Kim argues that the word "'[a]bout' is used because fruit juices are a mixture of food

acids." Kim cites generally to the prosecution history in support of her construction.

A heavy presumption exists, however, that the ordinary meaning of a word in a claim

---

[5] The Court notes that it is not bound by Judge Hart's construction of the claims in *Kim v. ConAgra Foods, Inc.*, No. 01 C 2467, 2004 WL 626140 (N.D. Ill. Mar. 26, 2004). *RF Del., Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255 (Fed. Cir. 2003).

[6] Although counsel represented Kim at the time the parties filed the Joint Claim Construction Statement, Kim personally submitted an "Amended Joint Claim Construction Statement" on May 24, 2004 that purported to be jointly filed. (R. 79-1, Am. Joint Claim Constr. Stmt.) Kim, however, never submitted her "amended" statement to Dawn for approval. Accordingly, the Court struck Kim's Amended Joint Claim Construction Statement on June 8, 2004. (R. 81-1, Minute Order.)

applies. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002). The Court

may consult dictionaries to determine the ordinary meaning of a word. *Texas Digital,* 308 F.3d

at 1202-03. "As a general rule, the construing court interprets words in a claim as one of skill in

the art at the time of the invention would understand them." *Eastman Kodak Co. v. Goodyear*

*Tire & Rubber Co.,* 114 F.3d 1547, 1555 (Fed. Cir. 1997). The '355 patent issued on October

26, 1999. Accordingly, the Court consults *Random House Webster's College Dictionary*

(Random House, Inc. 1998).

That dictionary defines the word "about" as "approximately; near; close to." *Random*

*House Webster's College Dict.* at 4. There is nothing in the claim language, the specification[7], or

the prosecution history that compels a deviation from this ordinary meaning. In the absence of an

express intent by the patentee to impart a novel meaning to a claim term, the words are presumed

to take on the ordinary and customary meaning attributed to them by those of ordinary skill in the

art. *Teleflex,* 299 F.3d at 1325.

Accordingly, the Court construes the term "about 0.001 to 0.03 parts ascorbic acid" to

mean "approximately 0.001 to 0.03 parts ascorbic acid."

---

[7] The specification does not require a different construction. *See* '355 patent, col. 5, lns. 36-39 ("Ascorbic acid incorporated into a yeast-leavened product mix formula ranges from about 10 ppm to 300 ppm, preferably about 15 ppm to 250 ppm by weight of flour."); '355 patent, col. 5, lns. 46-49 ("Food acid ranging from about 0.015 to 0.20 parts, preferably about 0.2 to 0.15 parts per 100 parts flour is added to the yeast-leavened product mix formula.").

3. **"About 0.015 To 0.2 Parts Food Acid Per 100 Parts Flour, Said Food Acid Selected From The Group Consisting Of Acetic Acid, Citric Acid, Fumaric Acid, Lactic Acid, Malic Acid, Oxalic Acid, Phosphoric Acid, Succinic Acid, Tartaric Acid, Fruit Juice, Fruit Juice Concentrate, Vinegar, Wine, And Mixtures Thereof" (Claims 5, 6-8, 10)**

Dawn argues that this term means that "[f]ood acid is one or more of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine." Kim contends that "the food acids used as acidulents inactivate metal ions by forming the copper-food acid complex that is dependent on the pH value of food products."

Dawn's proposed construction tracks the claim language. Kim's proposed construction improperly adds meaning that is not found in the claims and is not required by the specification or prosecution history. Accordingly, the Court adopts Dawn's construction.

4. **"Flour" (Claims 5, 6-8, 10)**

Dawn argues that flour is "the total flour of the accused product." Kim contends that "flour is included in the claims of the '355 patent to particularly point out and distinctly claim that the Plaintiff's potassium bromate replacers I and II are used with flour in the manufacture of yeast-leavened products but *not* used with fruit juice beverages, etc." (Emphasis in original).

The Court rejects Dawn's construction because it is improper to construe a claim by referencing the Accused Products. *Jurgens v. McKasy,* 927 F.2d 1552, 1560 (Fed. Cir. 1991) ("[A] claim is construed without regard to the accused product."). The Court rejects Kim's construction because it defines the purpose of the flour rather than the meaning of the claim.

The Court adopts the ordinary meaning of the word "flour," which is "the finely ground

meal of grain, esp. wheat, separated by bolting." *Random House Webster's College Dict.* at 499.

### 5. "Wherein Said Food Acid Slows Down Oxidation Of Ascorbic Acid" (Claims 6)

Dawn contends that "[t]his claim adds no new features to the invention. This is inherent in the formula of claim 5." Kim argues that this phrase means that "the function of each component in a composition during manufacturing process of yeast-leavened products, actually enforcing the role of each component's function in claim 5 in the production of yeast-leavened products."

The Court rejects Dawn's construction because each word in the claims must have meaning. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582 (Fed. Cir. 1996). The Court rejects Kim's construction because it does not make sense and it does not track the claim language. This claim term consists of "ordinary, simple English words whose meaning is clear and unquestionable. . . . They mean exactly what they say." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004). Accordingly, the term is construed to mean that the food acid functions to slow down the oxidation of ascorbic acid.

### 6. "Yeast Food" (Claim 10)

Dawn urges the Court to give the term "yeast food" its ordinary meaning: "any commercially available mineral yeast food that includes a combination of such ingredients as calcium sulfate, ammonium sulfate, starch, etc." Kim contends that "[y]east food is added to the '355 patent because potassium bromate replacers I (one) and II (two) are diluted with yeast food that provides nutrient for rapid yeast growth and convenience in measuring them in commercial bakeries."

12

The Court rejects Kim's proposed construction because it deviates from the clear language of the claim. The Court adopts the ordinary meaning of the term "yeast food" and construes it to mean "any commercially available mineral yeast food that includes a combination of such ingredients as calcium sulfate, ammonium sulfate, starch, etc."

## B.    Infringement

The next step in the Court's patent infringement analysis is to compare the construed claims to the Accused Products. *Int'l Rectifier*, 361 F.3d at 1369.

### 1.    Literal Infringement

Under the All Elements Rule, "[t]o prove infringement, the patentee must show that the accused device meets each claim limitation." *Deering Precision Instruments*, 347 F.3d at 1324; *Warner-Jenkinson*, 520 U.S. at 29; *Pennwalt*, 833 F.2d at 935-36. "An accused device literally infringes a claim if every limitation recited in the claim appears in the accused device, *i.e.,*, the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc.*, 205 F.3d at 1382 (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

To survive summary judgment of no literal infringement, Kim must show, *inter alia*, that the Accused Products have "approximately 0.001 to 0.03 parts ascorbic acid" (the "Ascorbic Acid" limitation) (Claims 5, 6-8, 10), "approximately 0.015 to 0.2 parts food acid per 100 parts flour" (the "Food Acid" limitation) (Claims 5, 6-8, 10), and "approximately 0.5 parts yeast food per 100 parts flour" (the "Yeast Food" limitation) (Claim 10).

#### a.    Dawn's Yeast Raised Donut Mix Does Not Meet The Food Acid Limitation (Claims 5, 6-8, 10)

The Yeast Raised Donut Mix is a dry mix formula intended for use in the production of

yeast-raised donuts. The Donut Mix does not meet the Food Acid limitation. Citric acid is the only food acid claimed in the '355 patent that is present in products made with the Donut Mix. Dawn placed 'the current formula for Dawn's Yeast Raised Donut Mix (Formula No. 32987) into production on September 14, 2000. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 65.) Dawn placed the previous formula for Dawn's Yeast Raised Donut Mix (Formula No. 20 B 3325) into production on December 6, 1991. (*Id.* ¶ 66.)

Kim does not adequately dispute that the amount of citric acid in products made using either Formula No. 32987 or Formula No. 20 B 3325 is less than about 0.0012 parts citric acid per 100 parts flour.[8] Kim also does not adequately dispute that the Donut Mix has had the same

---

[8] Dawn's expert stated in his declaration that "[i]n baker's percentages, the amount of citric acid in products made using either Formula No. 32987 or Formula No. 20 B 3325 is less than about 0.0012 parts citric acid per 100 parts flour." (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 69; R. 99-1, Def.'s Br. in Supp. of Summ. J, Ex. D, Vetter Decl. ¶ 49.) Kim denies this statement, arguing that "[t]he defendant fails to explain that the citric acid in Dawn's Yeast Raised Donut Mix falls within the claimed ranges of food acid listed in Example 1 (*i.e.*, about 0.08 citric acid per 100 parts flour) . . . . the citric acid is about from 0.0003 to 0.0012 parts citric acid per 100 parts flour." (R. 104-1, Pl.'s Rule 56.1 Resp. ¶ 69.) Kim cites Exhibit 8 to support her statement. Exhibit 8 is an unauthenticated handwritten note in which Kim purported to transcribe a message allegedly left on her answering machine by Dan Coules of Test America, Inc. regarding test results of samples of the Accused Products. Kim offers nothing to establish the authenticity of this exhibit—she has no personal knowledge of the tests that Coules allegedly performed, and she has not submitted a declaration from Coules. Exhibit 8 is inadmissible hearsay. *See Mertz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) ("The facts [on summary judgment] must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence."). A non-movant cannot defeat summary judgment with inadmissable evidence. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997) (hearsay evidence is inadmissible on summary judgment). Even if the Court were to consider this handwritten note, however, it is still insufficient to create an issue of fact because the note is silent as to the level of citric acid in Dawn's Donut Mix. The note cryptically states that "BHT in their products is near in our bottom detection limits, which is somewhere in the both samples. One has no BHT in it. We won't be able to detect any, so although it is listed in the ingredient

14

citric acid content since December 6, 1991.[9] Thus, products made with the Donut Mix have had

less than about 0.0012 parts citric acid per 100 parts flour since the '355 patent issued. Kim does

not dispute that a product with less than 0.0012 parts citric acid does not meet the claim

limitation of "about 0.015 to 0.2 parts food acid per 100 parts flour." (R. 100-1, Def.'s Rule 56.1

Stmt. ¶¶ 73-75; R. 104-1, Pl.'s Rule 56.1 Resp. ¶¶ 73-75.) Accordingly, the Donut Mix does not

literally meet the Food Acid limitation of the asserted claims.

### b. Dawn's Yeast Raised Donut Mix Does Not Meet The Yeast Food Limitation (Claim 10)

It is undisputed that products made with the Donut Mix do not include yeast food in any

amount. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 70; R. 104-1, Pl.'s Rule 56.1 Resp. ¶ 70.) Thus, the

Donut Mix does not literally infringe Claim 10 for two independent reasons: it does not meet the

Food Acid limitation and it does not meet the Yeast Food limitation.

---

statement. Anyway I am doing more work because peak shape wasn't good and various other things almost turn into a little method development problems." Nothing in this handwritten note suggests that the citric acid content of the Donut Mix is anything other than 0.0012 parts citric acid per 100 parts flour. Kim further filed a document purporting to be an "Analytical Report" from Test America. This document is inadmissible hearsay to the extent that Kim offers it for the truth of the matter asserted. Kim provides no evidence establishing the document's authenticity, and it is unclear whether Kim served Dawn with a copy of this document. In any event, Kim bases her infringement arguments on Exhibit 8 and does not appear to rely on the "Analytical Report." (*See* R. 106-1, Pl.'s Decl. ¶¶ 34, 44, 46, 47.)

[9] Kim denies Dawn's statement by asserting that "Dawn's bag has two blank spaces in English and one blank space in French (last revised date is April 7, 2000) and the samples of Dawn's products which Mr. Jones provided to Mr. Dan Coules of Test America, Inc., on August 10, 2000 (last date revised: February 02, 1999, February 06, 1999, July 09, 1998)." (R. 105-1, Pl.'s Rule 56.1 Resp. ¶ 71.) While Kim apparently argues that the Donut Mix formulas have changed, she does not refute Dawn's expert's statement that the changes did not alter the ascorbic acid and food acid content of the Donut Mix. (*See* R. 99-1, Def.'s Br. in Supp. of Summ. J, Ex. D, Vetter Decl. ¶ 51 (explaining that the change to the flour make-up and the change in leavening agent did not affect the ascorbic acid and food acid content).)

### c. Dawn's Danish Mix Does Not Meet The Food Acid Limitation (Claims 5, 6-8, 10)

The Danish Mix is a dry mix formula intended for use in the production of Danish pastries. Citric acid is the only acid listed in the food acids claimed in the '355 patent that is present in products made using either Formula No. 34884 or Formula No. 60 B 9600. Dawn placed the current formula for Dawn's Danish Mix (Formula No. 34884) into production on March 14, 1997. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 76.) Dawn placed the previous formula for its Danish Mix (Formula No. 60 B 9600) into production on January 3, 1991. (*Id.* ¶ 77.)

Kim does not adequately dispute that the amount of citric acid in Danish Mix products made according to either Formula No. 34884 or Formula No. 60 B 9600 is less than about 0.0033 parts citric acid per 100 parts flour.[10] Kim also does not adequately dispute that the Danish Mix has had the same citric acid content since January 3, 1991.[11] Kim testified in her deposition that a product with 0.006 parts citric acid per 100 parts flour would not infringe because the level of citric acid is too low. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶¶ 73-75; R. 104-1, Pl.'s Rule 56.1 Resp. ¶¶ 73-75.) Accordingly, products made with the Danish Mix—that have an even lower citric acid content of less than about 0.0033 parts citric acid per 100 parts flour—do not meet the Food

---

[10] Dawn's expert submitted a declaration in which he stated that "[i]n baker's percentages, the amount of citric acid in products made using either Formula No. 34884 or Formula No. 60 B 9600 is less than about 0.0033 parts citric acid per 100 parts flour." (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 80; R. 99-1, Def.'s Br. in Supp. of Summ. J, Ex. D, Vetter Decl. ¶ 57.) Kim denies this statement, and states that "[t]he response No. 80 is answered in No. 69," which cites Exhibit 8. For the reasons stated in footnote 8, *supra*, Kim's reliance on the handwritten note in Exhibit 8 does not create an issue of fact.

[11] Kim denies Dawn's expert's statement by citing her response to Statement 71. For the reasons stated in footnote 9, *supra*, Kim's response does not create an issue of fact.

Acid limitation.

Since the '355 patent issued on October 29, 1999, the ascorbic acid content of the Danish Mix products has been about 0.0407 parts per 100 parts flour. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 79; R. 99-1, Def.'s Br. in Supp. of Summ. J, Ex. D, Vetter Decl. ¶ 56) ("In baker's percentages, the amount of ascorbic acid in products made using Formula No. 34884 is equal to about 0.0407 parts ascorbic acid per 100 parts flour. In baker's percentages, the amount of ascorbic acid in products made using Formula No. 60 B 9600 is equal to about 0.0409 parts ascorbic acid per 100 parts flour.").) Kim does not adequately dispute this statement.[12] Kim also does not adequately dispute that the Danish Mix has had the same ascorbic acid content since January 3, 1991.[13] Kim testified in her deposition that a product with a level of 0.04 parts ascorbic acid per 100 parts flour would not fall within the claimed range because the level of ascorbic acid is too high. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶ 84; R. 104-1, Pl.'s Rule 56.1 Resp. ¶ 84.) Accordingly, products made with the Danish Mix—that have an even higher ascorbic acid content of about 0.0407 parts ascorbic acid per 100 parts flour—do not meet the Ascorbic Acid limitation.

### d. Dawn's Danish Mix Does Not Meet The Yeast Food Limitation (Claim 10)

It is undisputed that products made with the Danish Mix have not included yeast food in

---

[12] Kim denies Dawn's expert's statement by stating that "[t]he defendant's claim is *not* true." (Emphasis in original). In support, Kim cites her own declaration, in which she states that "James Vetter should have known . . . to calculate the amount of ascorbic acid in Danish mix, he must take into account that kg Margarine is used with 4 kg dough to make finished baked Danish." (R. 106-1, Pl.'s Decl. ¶ 47.) Kim does not explain the relevance of her statement, or how it refutes Dawn's expert's statement.

[13] Kim denies Dawn's expert's statement by citing her response to Statement 71. For the reasons stated in footnote 9, *supra*, Kim's response does not create an issue of fact.

any amount since January 3, 1991. (R. 100-1, Def.'s Rule 56.1 Stmt. ¶¶ 81-82; R. 104-1, Pl.'s Rule 56.1 Resp. ¶¶ 81-82.) Thus, the Danish Mix does not literally infringe Claim 10 for three independent reasons: it does not meet the Food Acid limitation, the Ascorbic Acid limitation, or the Yeast Food limitation.

Accordingly, neither the Donut Mix nor the Danish Mix literally infringe the asserted claims.

### 2.    Infringement Under The Doctrine Of Equivalents

Kim does not assert infringement under the doctrine of equivalents in her Amended Complaint (*See* R. 23-1, Am. Compl. at 7-9), and neither party argued the doctrine of equivalents in the summary judgment briefs. Accordingly, Kim has waived any argument as to infringement under the doctrine of equivalents. *Blistix, Inc. v. Circle Labs., Inc.*, No. 00 C 3084, 2001 WL 388884, at *4 n.1 (N.D. Ill. Apr. 12, 2001) (patentee's failure to argue the doctrine of equivalents on summary judgment resulted in waiver) (citing *United States v. Magana,* 118 F.3d 1173, 1198 n.15 (7th Cir. 1997)).

### C.    The Court Need Not Decide The Question Of Invalidity

Dawn asserts a counterclaim and several affirmative defenses as to invalidity. In light of the Court's ruling that the Accused Products do not infringe the '355 patent, these arguments are moot. "[A] district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement." *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998); *see also Nestier Corp. v. Menasha Corp.-Lewisystems Div.,* 739 F.2d 1576, 1580-81 (Fed. Cir. 1984) ("[T]here was no reversible error or abuse of discretion . . . in the District Court's withholding of judgment on the issues related to the . . . patent's

18

validity—despite the jury's having found the patent not invalid—in light of the jury's finding of noninfringement.").

## II.    The Court Declines To Exercise Supplemental Jurisdiction Over Kim's Remaining State Law Claims (Counts I and III)

The Court originally had jurisdiction over this case under 28 U.S.C. § 1338(a) because Kim's patent infringement claim in Count IV presented a federal question. In light of the Court's grant of summary judgment of noninfringement, however, the Court no longer has federal question jurisdiction[14] over Dawn's remaining state law claims[15] of breach of contract (Count I) and trade secret misappropriation (Count III). The question of whether the Court should continue to exercise supplemental jurisdiction over the remaining state law claims is entirely within the Court's discretion. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). The Court declines to exercise its discretion to retain supplemental jurisdiction over Kim's remaining state law claims.

---

[14] Nor does the Court have diversity jurisdiction over Kim's state law claims. Kim does not attempt to invoke diversity jurisdiction. In her Amended Complaint, she invokes only the Court's federal question jurisdiction and supplemental jurisdiction. (*See* R. 23-1, Am. Compl. at 1 ("This Court has jurisdiction under § 1338(a) and § 1367(a) of Title 28 of U.S.C.").)

[15] The Court notes that Kim improperly included arguments in her summary judgment response with respect to her fraud claim (Count II) and her trademark claim. Judge Lefkow, who previously presided over this case, dismissed Kim's fraud claim with prejudice on August 27, 2002. (R. 28-1, Minute Order) (Lefkow, J.) The Court denied Kim's motion to amend her complaint to add a claim of trademark infringement of her SLO-C trademark on March 16, 2004. (R. 73-1, Minute Order.) Accordingly, the Court need not address Kim's arguments as to fraud and trademark infringement.

## CONCLUSION

Because Kim has failed to establish a genuine issue of fact as to literal infringement and does not argue infringement under the doctrine of equivalents, the Court grants summary judgment of noninfringement (Count IV), and grants Dawn's motion for declaratory judgment of noninfringment (Counterclaim I). In light of the Court's ruling that Dawn does not infringe the claims of the '355 patent either literally or under the doctrine of equivalents as a matter of law, Dawn's Counterclaim II and affirmative defenses as to invalidity are moot and Dawn's summary judgment motion as to invalidity is denied as moot. Finally, the Court declines to exercise supplemental jurisdiction over Kim's remaining state law claims of breach of contract (Count I) and trade secret misappropriation (Count III).

Dated: October 12, 2004

ENTERED

AMY J. ST. EVE
United States District Court Judge